IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **(1) (1) Purple Apple I-Phone with Hand and Eyes case, (1) Blue Apple I-Pad, (1) Purple Apple I-Phone with clear case, (1) Black Apple I-Phone, (1) Grey Apple I-Phone in a smoked see through case**, CURRENTLY LOCATED AT **DEA Columbus District Office – Temporary Storage Locker located at 500 South Front Street, Columbus, Ohio 43215** | Case No. 2:24-mj-462 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Caroline G. Dardini, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), an agent or law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), empowered to conduct investigations and enforce federal criminal statutes. I have been a SA with the DEA for six months. I am currently assigned to Group 4 of the DEA's Columbus District Office. This group is comprised of narcotics investigators from the DEA and the Columbus Police Department (CPD). Group 4 was designed, in part, to target individuals and groups involved in the

manufacture and distribution of methamphetamine, cocaine, heroin, and fentanyl in Franklin County, Ohio. Prior to being employed by the DEA, I was employed for approximately two years as an Intelligence Analyst with The Office of Inspector General (OIG) for the United State Postal Service (USPS). As an Intelligence Analyst, I participated and conducted investigations involving physical surveillance, undercover transactions, controlled purchases and deliveries, court ordered pen registers, and electronic communication interceptions. I received training in the investigation of drug trafficking, telecommunication exploitation, internet communication exploitation, the use of the United States Postal Service facilities in furtherance of narcotics trafficking, and money laundering.

    3.    As a DEA Special Agent, Your Affiant, has participated in numerous narcotics investigations involving various types of controlled substances.  I have received training at the DEA Basic Agent Training Academy located at Quantico, Virginia, pertaining to the investigation of various crimes which arise from narcotics trafficking. These trainings included: money laundering, the use of interstate transportation in the furtherance of narcotics trafficking, the use of the United States Postal Service facilities in furtherance of narcotics trafficking, and the use of telecommunications facilities in the furtherance of narcotics trafficking.  I have participated in investigations involving the purchase of controlled substances from suspected narcotics traffickers using both undercover narcotics investigators and confidential sources.  I have participated in the drafting and execution of search warrants for narcotics, proceeds from the sale of narcotics, documentary evidence of narcotics trafficking, and for the telecommunications devices used by narcotics traffickers.  I have conducted surveillance in connection with narcotics investigations.

4. Through the course of these investigations, I have personally interviewed confidential sources and other persons involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked concerning the practices of narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the course of my investigations and through my conversations with more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances.

5. The information set forth in this affidavit comes from your affiant's personal involvement in this investigation, as well as information provided to your affiant by other law enforcement officers. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is a **(1) Purple Apple I-Phone with Hand and Eyes case, (1) Blue Apple I-Pad, (1) Purple Apple I-Phone with clear case, (1) Black Apple I-Phone, (1) Grey Apple I-Phone in a smoked see through case,** hereinafter the "Devices." The Devices are currently located at the **Drug Enforcement Administration (DEA) Columbus District Office temporary storage locker, 500 South Front Street, Columbus, Ohio 43215.**

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

8. Because this affidavit is being submitted for the limited purpose of seeking authorization for the execution of a search warrant, your Affiant has not set forth each and every fact learned during the course of this investigation. Your Affiant has set forth only those facts that your Affiant believes are necessary to establish the foundation for an order authorizing the requested search warrants.

9. On August 30, 2024, DEA became aware that a known source of supply, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ had flown into Columbus, Ohio from Arkansas. Based on a GPS tracker located on ▓▓▓▓▓▓▓▓▓▓ vehicle, DEA agents observed ▓▓▓▓▓▓▓▓▓▓ meet up with a 2018 light blue Ford Escape, bearing Illinois state tag EK17083, on the west side of Columbus, Ohio on September 2, 2024. DEA agents then observed ▓▓▓▓▓▓▓▓▓▓ get out of his vehicle and meet, who agents later identified as Crystal Marie MIRANDA, at the back-trunk area of the Ford Escape. DEA agents observed that the rear hatch of the Ford Escape was open. The Ford Escape then left the area.

10. Approximately 15 minutes later, at approximately 8:43 PM, on September 2, 2024, Ohio State Highway Patrol (OSP) Troopers conducted a traffic stop on the light blue Ford Escape, bearing the Illinois state tag EK17083, and registered to a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for a traffic violation on South Central Avenue and Union Avenue, Columbus, Ohio. OSP Troopers identified the occupants of the blue Ford Escape as Crystal Marie MIRANDER (driver), the front passenger was identified as a juvenile, ▓▓▓▓▓▓▓▓▓▓ (right side passenger), and ▓▓▓▓▓▓▓▓▓▓ (left rear driver's side passenger). OSP Trooper Jake Lawrence deployed his police canine (K-9) Darius, who is trained in the detection of narcotics odors, in the vicinity of the vehicle. According to OSP Trooper Lawrence, the K-9 altered to the

4

presence of a narcotic odor emitting from the vehicle. OSP Troopers then conducted a search of the vehicle and occupants resulting in the seizure of (1) Purple Apple I-Phone with a Hand and Eye case, (1) Blue Apple I-Phone, (1) Purple Apple I-Phone with a clear case, (1) Black Apple I-Phone, (1) Grey Apple I-Phone in a smoked see through case, and approximately 25 kilograms of suspected cocaine located in the vehicle as follows: (5) bricks wrapped in tin foil and plastic in the right ear passenger interior door panel; (8) bricks wrapped in tin foil and plastic in the left rear passenger door panel; and (7) bricks wrapped in tin foil and plastic in the ear hatch panel.

11. Investigators arrived at the scene of the traffic stop in order to assist troopers with the driver and passengers of the vehicle. Investigators had all occupants from the vehicle and subsequent evidence, transported back to the Columbus District Office for processing and interviews. During the interview(s) with the three adult occupants of the blue Ford Escape, no one claimed responsibility for the cocaine found in the vehicle. However, Crystal Marie MIRANDA claimed shared ownership of the vehicle with ███████████████. MIRANDA later suggested to investigators that the (25) kilograms of suspected cocaine found inside the blue Ford Escape must have already been in the vehicle when MIRANDA and ███ purchased it. The suspected cocaine located inside the blue Ford Escape was subsequently field tested and tested positive for cocaine.

12. I am aware, through training and experience, that it is common for narcotics traffickers to utilize multiple cellular phones as well as multiple cell phone numbers to arrange and complete narcotics transactions. I am also aware, through training and experience, that it is common for narcotics traffickers to utilize multiple cellular phones as well as multiple cell phone numbers to contact their customer base as well as sources of supplies to obtain the narcotics in which they traffic.

13. The Devices are currently in the lawful possession of the DEA. It came into the possession of the DEA pursuant to the arrest of MIRANDA. Therefore, while the DEA might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

14. The Devices are currently in storage at the **DEA Columbus District Office, Temporary Storage Locker located at 500 South Front Street in Columbus, Ohio 43215** In my training and experience, I know that the Devices has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DEA.

## **TECHNICAL TERMS**

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and

6

storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio,

     using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   d.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  16. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as, among other things, a wireless telephone for voice and text messages, digital camera, portable media player, GPS navigation device and portal to the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

  17. Based on my knowledge, training, and experience, I know that electronic devices, such as cellular telephones, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

  18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices

were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    f. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    g. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    h. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Caroline Dardini*

Caroline G. Dardini
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on September 16, 2024:



Elizabeth A. Preston Deavers
United States Magistrate Judge